KEVIN ROCKOFF (SBN 260981)
LAW OFFICES OF KEVIN A. ROCKOFF
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
Phone: 949-329-8259
Email: contact@valorlaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE ROSENE, an individual<br><br>Plaintiff,<br><br>v.<br><br>CENTURY SUPPORT SERVICES LLC, a Pennsylvania Limited Liability Company.<br><br>Defendant. | Civil Case No<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c) and 47 U.S.C. §227(b)]<br>2. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Steve Rosene with his Original Complaint and will allege and show as follows:

## NATURE OF THE CASE

1. Plaintiffs bring this action individually seeking damages and any other available legal or equitable remedies resulting from the illegal actions of CENTURY SUPPORT SERVICES, LLC. ("Century" or "Defendant"), in negligently, knowingly and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C.* § 227, et seq. ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

## PARTIES

2. Plaintiff STEVE ROSENE ("Plaintiff" or "Rosene") is a natural person, a resident of this District and was present in California for all calls received in this case.

3. Defendant Century is a Limited Liability Company organized and existing under the laws of Pennsylvania and can be served via registered agent C T Corporation System, 1999 Bryan St., Suite 900, Dallas Texas 75201.

## JURISDICTION AND VENUE

4. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).

5. **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at California residents, including the Plaintiff—occurred in

this District and because the Plaintiff was residing in the Southern District of California when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

6. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

7. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

10. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

11. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012)

12. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

15. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

16. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

17. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d).

18. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that they have provided the required information on each of the calls.

19. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

20. These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations (DNC). A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

21. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

22. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

23. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendant, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

24. Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally

authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001) ("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

25. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

26. The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2] 47 C.F.R. § 64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally, the regulations require telemarketers to -provide the name of the telemarketer when available by the telemarketers carrier and the seller's customer service number.

27. Here, Defendant did not comply with the requirements of 47 C.F.R. **§ 64.1601(e)** as it provided incorrect information regarding the number from which the calls were being made**.**

**FACTUAL ALLEGATIONS**

28. Plaintiff was registered on the National Do Not Call List at all times relevant to this Complaint.

29. Plaintiff registered his phone number to gain seclusion from unwanted solicitation phone calls.

30. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

cellular phones to communicate with family and friends. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, playing music through his house speakers, timing food when cooking, and sending and receiving text messages. Plaintiff pays for the cell phone from his personal accounts and the phone is not primarily used for any business purpose.

31. Plaintiff did not consent to any of the phone calls alleged herein.

32. Century hired and authorized American Services, Self Debt, US Financial, Debt Relief Center, and American Financial to make phone calls on its behalf to solicit the debt relief services of Century.

33. Plaintiff received the first phone call on May 23, 2024, that displayed 667-310-8638 on the caller identification. The phone call resulted in an automated voicemail informing Plaintiff that he was prequalified for a loan up to $39,000 to pay off debt. Plaintiff called the number provided and was transferred to someone with Self Debt. Plaintiff hung up the phone.

34. Plaintiff received the second phone call on July 17, 2024, that displayed 949-328-3426 on the caller identification. Plaintiff answered the phone and spoke to Gavin Nelson with Self Debt. Gavin Nelson then transferred the call to Gary Miles with Self Debt. Gary Miles emailed a contract to Plaintiff on behalf of Century.

35. Plaintiff received the first text message on July 17, 2024, that displayed 561-593-8368 on Plaintiff's caller identification. The text message was from Gary Miles with Self Debt sharing his contact information. Plaintiff did not respond.

36. Plaintiff received the second text message on July 17, 2024, that displayed 561-593-8368 on Plaintiff's caller identification. The text message was from Gary Miles with Self Debt. Plaintiff responded to the text that he was not interested and to stop calling.

37. Plaintiff received the third text message on July 17, 2024, that displayed 561-593-8368 on Plaintiff's caller identification. The text was from Gary Miles with Self Debt. Plaintiff did not respond.

38. Plaintiff received the fourth text message on July 17, 2024, that displayed 561-593-8368 on Plaintiff's caller identification. The text message was from Gary Miles with Self Debt requesting that Plaintiff look up Century on the BBB. Plaintiff did not respond.

39. Plaintiff received the third phone call on July 18, 2024, that displayed 561-593-8368 on Plaintiff's caller identification. The phone call was from Gary Miles with Self Debt. Plaintiff said he was not interested and to stop calling.

40. Plaintiff received the fourth phone call on July 19, 2024, that displayed 561-778-1301 on the caller identification. The phone call was from someone on behalf of Gary Miles with Self Debt. Plaintiff said he was not interested and to stop calling.

41. Plaintiff received the fifth phone call on July 19, 2024, that displayed 561-778-1301 on the caller identification. The call was from the same number as the previous call from someone on behalf of Gary Miles with Self Debt. Plaintiff did not answer the call.

42. Plaintiff received the sixth phone call on July 25, 2024, that displayed 239-399-8711 on the caller identification. The call was from Ben with US Financial. Plaintiff was then transferred to Ben's Supervisor Tom. Tom then transferred Plaintiff to George Perez with Debt Relief Center and the call was dropped.

43. Plaintiff received the seventh phone call on July 25, 2024, that displayed 626-200-2933 on the caller identification. The call was from Tom with US Financial. Tom then transferred the call to Annette, the call dropped.

44. Plaintiff received the eighth phone call on July 9, 2024, that displayed 626-200-2933 on the caller identification. The call was from Tom with US Financial. Tom transferred the call to Aaron with Century. Aaron emailed a contract to Plaintiff on behalf of Century. Plaintiff once again said that he was not interested and to stop calling.

45. Plaintiff received the ninth phone call on July 25, 2024, that displayed 949-994-8977 on the caller identification. The call was from Aaron with Century asking if Plaintiff would speak with Aaron's supervisor. Plaintiff told Aaron that he was not interested and to stop calling.

46. Email sent on July 25, 2024, from Century congratulating Plaintiff on almost completing his enrollment in their program. Plaintiff responded that he was not interested and to stop calling.

47. Plaintiff received the tenth phone call on August 5, 2024, that displayed 712-250-9215 on the caller identification. The call was a call from Tom Norman with American Financial on behalf of Century. Plaintiff asked Tom how he got his contact information. The call was dropped.

48. Plaintiff received the eleventh phone on August 7, 2024, that displayed 561-593-8368 on the caller identification. The call was from Gary Miles with Self Debt asking why Plaintiff was not interested in the debt relief program that Century offered. Plaintiff told Gary that he was not interested and to stop calling.

49. Plaintiff received the fifth text message on August 7, 2024, that displayed 561-593-8368 on the caller identification. It was from Gary Miles asking that Plaintiff call him back. Plaintiff did not respond.

50. Because the contracts sent to Plaintiff are all for Century it has been determined that each of the calls and texts on May 23rd, July 17th, July 18th, July 19th, July 25th, August 5th, and August 7th are all on behalf of Century.

51. Plaintiff did not have an existing business relationship with Defendant and never consented to receive phone calls from Defendant.

52. Plaintiff did not consent to any of the calls alleged herein.

53. Table A shows the calls sent to Plaintiff by Defendant.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| **1.** | 05/23/2024 | 2:27PM | 667-310-8638 | Auto VM for prequalified loan of $39k to pay off debt. Called # provided, someone with Self Debt answered. Hung up phone |
| **2.** | 07/17/2024 | 4:19PM | 949-328-3426 | Call from Gavin Nelson with American Services. Transferred to Gary Miles with Self Debt. Contract emailed for Century |
| **3.** | 07/17/2024 | 4:31PM | 561-593-8368 | Text from Gary Miles with selfdebt.com |
| **4.** | 07/17/2024 | 5:27PM | 561-593-8368 | Text from Gray Miles with Self Debt. Told him not interested, stop calling. |
| **5.** | 07/17/2024 | 5:36PM | 561-593-8368 | Text from Gary Miles. Did not respond. |
| **6.** | 07/17/2024 | 5:37PM | 561-593-8368 | Text from Gary Miles asking that Century be looked up on the BBB. |
| **7.** | 07/18/2024 | 10:49AM | 561-593-8368 | Call from Gary Miles. Told him not interested, stop calling |
| **8.** | 07/19/2024 | 1:58PM | 561-778-1301 | Call from someone on behalf of Gary Miles. Told him not interested, stop calling. |
| **9.** | 07/19/2024 | 2:01PM | 561-778-1301 | Same # as the person calling on behalf of Gary Miles. Did not answer the call. |
| **10.** | 07/25/2024 | 3:30PM | 239-399-8711 | Call from Ben with US Financial. Transferred to supervisor Tom. Transferred |

| | | | | |
|---|---|---|---|---|
| | | | | to George Perez with Debt Relief. Call dropped. |
| **11.** | 07/25/2024 | 3:49PM | 626-200-2933 | Call from tom US Financial. Transferred to Annette. Call dropped. |
| **12.** | 07/25/2024 | 3:56PM | 626-200-2933 | Call from Tom w/US Financial. Transferred to Aaron with Century. Contract emailed. |
| **13.** | 07/25/2024 | 4:33PM | 949-994-8977 | Call from Aaron with Century asking if I wanted to speak with his supervisor. Told him not interested and to stop calling. |
| **14.** | 07/25/2024 | 4:47PM | EMAIL | Email sent from Century. Responded not interested, stop calling. |
| **15.** | 08/05/2024 | 4:56PM | 712-250-9215 | Call from Tom with American Financial of behalf of Century. Call was dropped. |
| **16.** | 08/072024 | 12:08PM | 561-593-8368 | Call from Gary Miles. Told him not interested, stop calling. |
| **17.** | 08/07/24 | 12:12PM | 561-593-8368 | Text from Gary Miles. Did not respond. |

54. Each call was placed without the maintenance of an internal do-not-call policy. Every call was placed without training their agents/employees on the use of an internal do-not-call policy.

55. No emergency necessitated the calls.

56. Through information and belief, Defendant did not have a written do-not-call policy while it was sending Plaintiff unsolicited calls.

57. Defendant placed multiple unauthorized phone calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

58. Every phone call was a knowing and willful violation because the act was intentional. A phone call can only be purposefully placed and cannot be an accident or mistake.

CENTURY IS VICARIOUSLY LIABLE FOR THE PHONE CALLS

59. Century is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as American Services, Self Debt, US Financial, Debt Relief Center, and American Financial. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

60. Century markets debt relief services through direct telephone solicitation by its hired telemarketers, American Services, Self Debt, US Financial, Debt Relief Center, and American Financial, who acts on its behalf. American Services, Self Debt, US Financial, Debt Relief Center, and American Financial enrolls potential clients for Century and accepts those leads with full knowledge that the phone call that contacted the customers violated the TCPA.

61. American Services, Self Debt, US Financial, Debt Relief Center, and American Financial made the phone calls on behalf of Century with the actual knowledge and authority of Century.

62. Century directs, controls, authorizes, and pays American Services, Self Debt, US Financial, Debt Relief Center, and American Financial to generate leads for debt relief services through telephone solicitation. Moreover, they require, authorize, or at least permit American Services, Self Debt, US Financial, Debt Relief Center, and American Financial telemarketers to solicit explicitly for debt relief representation.

63. Century sets the criteria for qualifying leads, which American Services, Self Debt, US Financial, Debt Relief Center, and American Financial must follow, and American Services, Self Debt, US Financial, Debt Relief Center, and American Financial transfer leads qualified on those criteria exclusively to Century. Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

64. On information and belief, Century wrote or at least approved the call script American Services, Self Debt, US Financial, Debt Relief Center, and American Financial telemarketers use when qualifying leads for Century.

65. Century maintained interim control over American Services, Self Debt, US Financial, Debt Relief Center, and American Financial by controlling how and under what circumstances they would accept clients from American Services, Self Debt, US Financial, Debt Relief Center, and American Financial.

66. American Services, Self Debt, US Financial, Debt Relief Center, and American Financial telemarketers are Century's associates and do nothing to disturb the impression that they work for and speak and act on behalf of Century.

67. American Services, Self Debt, US Financial, Debt Relief Center, and American Financial telemarketers' initial calls through Defendant Century's acceptance of a completed representation application, the telemarketing of Century's debt relief representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Century, the principals, American Services, Self Debt, US Financial, Debt Relief Center, and American Financial acting as Century's agents.

68. American Services, Self Debt, US Financial, Debt Relief Center, and American Financial, acting with actual and implied authority, made the prohibited calls, and qualified Plaintiff according to Century's criteria

**INJURY TO PLAINTIFF**

69. Defendant's phone calls invaded Plaintiff's privacy and were a nuisance.

70. Defendant's phone calls confused Plaintiff and caused Plaintiff to become aggravated.

71. Defendant made multiple phone calls even after Plaintiff told them to stop calling.

72. Defendant did not properly identify themselves and the company on whose behalf the phone calls were being made caused Plaintiff to spend valuable time investigating the origin of the phone calls.

73. Plaintiff was angry, frustrated, and annoyed by Defendant's phone calls.

74. Defendant's phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

75. Defendant's calls resulted in Plaintiff using his battery which resulted in more frequent charging of his cell phone, which reduced Plaintiff's enjoyment of his cell phone.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**

76. Plaintiff realleges and re-adopts paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77. Defendant placed, or had placed on their behalf, sixteen (16) telemarketing telephone calls to Plaintiff's cellular telephone number without prior express written consent.

78. Defendant has therefore violated 47 U.S.C. § 227(b).

79. As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

80. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**COUNT TWO:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

81. Plaintiff incorporates the preceding paragraphs 1 through 75 as if fully set forth herein.

82. Defendant placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

83. Plaintiff's telephone number was on the National Do-Not-Call Registry for more than 30 days at the time of calls.

84. Plaintiff received two or more such calls in a 12-month period.

85. Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of sixteen (16) solicitation phone calls.

86. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Steve Rosene prays for judgment against the Defendant as follows:

A. An order declaring that Defendant's actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

B. An order declaring that Defendant's actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

C. An award of statutory damages under the Telephone Consumer Protection Act;

D. An award of treble damages for each and every violation, pursuant to *47 U.S.C.* § 227 (b)(3)(B) and 47 USC § 227(b)(3)(C);

E. All other relief, in law and in equity, to which Plaintiff may be entitled, to which the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

87. Plaintiff hereby demands a trial by jury on all claims so triable.

LAW OFFICES OF KEVIN A. ROCKOFF.

September 17, 2024. Respectfully Submitted,

**/s/_Kevin A. Rockoff**

Kevin A. Rockoff
Law Offices of Kevin A. Rockoff
Attorney for Plaintiff